UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re:

James Lee Smithey

    Debtor(s)

JUDGE RICHARD L. SPEER

Case No. 10-30310

## DECISION AND ORDER

Before this Court is the Motion of the Trustee, Bruce French, to Compromise All Pending Matters. (Doc. No. 89). Joining in the Trustee's Motion to Compromise were the following parties-in-interest: (1) John McCormick, individually and as sole shareholder of Frost & Co., Inc.; (2) Frost Mechanical, Inc.; (3) Dick Nagel Electric, Inc.; and (4) Ohio Farmers Insurance Company. The Debtor has objected to the Trustee's Motion to Compromise. (Doc. No. 90).

On June 23, 2011, the Court held a hearing on the Debtor's Objection to the Trustee's Motion to Compromise. (Doc. No. 129). Also heard at this time were a number of other matters constituting the subject matter of the Trustee's Motion to Compromise. At the conclusion of this Hearing, the Court afforded the Parties a final opportunity to submit arguments in support of their respective positions on all the matters pending before the Court. The Court has now had the opportunity to review all of the arguments and evidentiary materials submitted by the Parties. Based upon this review, the Court, for the reasons set forth herein, finds that the Trustee's Motion to Compromise should be Granted.

## BACKGROUND

For a number of years, the Debtor, James Lee Smithey, and a partner, John McCormick, each owned a 50% interest in a business named Frost & Co., Inc. In turn, this business entity operated as a holding and parent company for these three subsidiaries: (1) Frost Mechanical, Inc., which operated

**In re: James Lee Smithey**
**Case No. 10-30310**

as a HVAC contractor; (2) Frost Roofing, Inc., which conducted business as a roofing contractor; and (3) Dick Nagel Electric, Inc., which operated as an electrical contractor.

In 2007, the Debtor purchased the second subsidiary, Frost Roofing, Inc., from the holding company of Frost & Co., thereby divesting John McCormick of his ownership interest in the business. At the time of this transaction, the Debtor also entered into an employment agreement with Frost & Co. As an employee and principal of Frost & Co., the information provided to the Court shows that the Debtor had considerable discretionary authority with the business, including the ability to write checks for large sums of money from the company account. On numerous occasions, the Debtor exercised this authority.

In 2007, Frost and Co., and its subsidiaries Frost Mechanical and Dick Nagel Electric, started to experience cash flow problems. Thereafter, the financial difficulties of these businesses were further compounded when Dick Nagel Electric became over budget and behind schedule on a major contractual obligation involving a municipal school project. Because of the deficiencies with the school project, both the Debtor and his partner, John McCormick, became personally liable on a surety bond issued by the Ohio Farmers Insurance Company. Although the timing is not exactly clear, by the end of 2008, the Debtor and John McCormick ceased doing business together. Thereafter, John McCormick continued to operate his business interests – *i.e.*, Frost & Co., Frost Mechanical and Dick Nagel Electric.

On January 22, 2010, the Debtor filed a petition in this Court for Relief under Chapter 7 of the United States Bankruptcy Code. In seeking relief, the Debtor disclosed that he was solvent, having assets valued at $972,103.09, versus liabilities of $431,220.13. In terms of value, the Debtor's most significant asset was an IRA worth $762,049.74 which the Debtor claimed as fully exempt.

**In re: James Lee Smithey**
**Case No. 10-30310**

The Debtor's liabilities were listed as being comprised solely of unsecured, nonpriority debt. Of the unsecured claims listed by the Debtor, the largest, by far, was owed to the Ohio Farmers Insurance Company. According to the Debtor, the amount of this claim was $413,000.00. Further, the Debtor set forth that this claim was unliquidated, and that the consideration for the claim was a "Personal Guarantee Bond." (Doc. No. 12). The Debtor also disclosed that, with regards to this claim, he had already paid $169,000.00, with this transaction occurring within 90 days of commencing his bankruptcy case.

In addition to the claim owed to the Ohio Farmers Insurance Company, the Debtor disclosed the existence of two contingent obligations, each having an unknown value. The first of these claims was set forth as owing to Frost Roofing, with consideration for this obligation being based upon a claim of indemnity. The second contingent claim disclosed by the Debtor was set forth as owing to his former business partner, John McCormick, with the consideration for this claim arising from "Contribution on Guaranteed Debts."

In his petition for bankruptcy relief, the Debtor set forth that his debts were primarily business debts. In this regard, the Debtor disclosed business interests, both past and present. First, at the time he filed for bankruptcy relief, the Debtor disclosed a 10% interest in a business entity known as Choctaw Properties. It was represented to the Court that the Debtor's wife held the remaining ownership interest in Choctaw Properties, with the sole assets of this business consisting of two properties of an indeterminate value.

The Debtor also disclosed his past business interests with John McCormick and Frost & Co., including its subsidiaries. As for his business interest in Frost Roofing, which he had purchased from Frost & Co., the Debtor disclosed that, prior to seeking bankruptcy relief, he had sold his interest in the business to his son.

Page 3

In re: James Lee Smithey
Case No. 10-30310

At the time he sought bankruptcy relief, the Debtor was also a party in three state-court lawsuits. The first lawsuit, commenced on August 24, 2009, was brought by the Ohio Farmers Insurance Company against the Debtor. In this action, involving the municipal school project mentioned earlier, the Ohio Farmers Insurance Company sought to recover on an indemnity agreement executed in its favor by the Debtor, as a principal of Frost & Co. According to the Ohio Farmers Insurance Company, the Debtor's contractual duty to indemnify it was triggered when, as a surety, it incurred losses on a Bid Guaranty and Contract Bond it issued for the benefit of Frost & Co. Also named as defendants in this lawsuit were John McCormick, Frost & Co., Frost Mechanical and Dick Nagel Electric, all of whom were co-obligors on the surety bond. After the Debtor filed for bankruptcy relief, this suit was removed to this Court. (Case No. 10-03128).

The second lawsuit, commenced on May 29, 2009, was brought by John McCormick, and his business interests – *i.e.*, Frost & Co., Frost Mechanical and Dick Nagel Electric – against the Debtor. Also named as a Defendant in this action was Frost Roofing, the business purchased by the Debtor. The gravamen of this lawsuit involved allegations that the Debtor, while a principal in the business of Frost & Co., breached his fiduciary duties, and committed acts of fraud, by misappropriating business assets for his own benefit. The Plaintiffs also alleged that the Debtor breached his employment agreement with Frost & Co. by failing to disclose expenditures outside the ordinary course and by failing to inform John McCormick of deficiencies in the operation of the business which eventually lead to the suit brought by the Ohio Farmers Insurance Company to recover on its surety bond. After the Debtor filed for bankruptcy relief, this lawsuit was also removed to this Court. (Case No. 10-3100).

The final lawsuit, commenced on December 30, 2008, was brought by the Debtor against Frost & Co. and Frost Mechanical. In this lawsuit, the Debtor obtained a judgment in the amount of $115,000.00 based on a cognovit note. Because of this judgment, the Debtor's estate currently has in its possession the sum of $119,558.44. At the time the Debtor filed his bankruptcy case, the

Page 4

**In re: James Lee Smithey**
**Case No. 10-30310**

Defendants in this suit were seeking to have the judgment set aside. As with the previous two lawsuits, this action was removed to this Court. (Case No. 10-3127).

Besides the three actions removed to this Court, two adversary proceedings were also commenced in the Debtor's bankruptcy case. First, John McCormick and his business interests commenced an action to have any claims they held against the Debtor determined to be nondischargeable debts. (Case No. 10-3129). Second, the Trustee is the lead plaintiff in an action to recover two alleged fraudulent transfers made by the Debtor prior to seeking bankruptcy relief. (Case No. 10-3135). These two transfers are: (1) the Debtor's conveyance of his entire interest in Frost Roofing to his son; and (2) the Debtor's conveyance of his interest in Choctaw Properties to his wife.

Against the Debtor's bankruptcy estate, a total of seven claims have been filed in this case. These claims are as follows:

Claim #1 filed by Chase Bank USA, N.A. Total amount claimed: $300.00.

Claim #2 filed by the Ohio Farmers Insurance Company. Total amount claimed: $431,578.58.

    Against this claim, both the Trustee and the Debtor filed an objection.

Claim #3 filed by Faulkner Garmhausen Keister. Total amount claimed: $3,154.73.

Claim #4 filed by Frost Co. Frost Mechanical. Total amount claimed: In an amount to be determined based upon a pending lawsuit.

    Against this claim, the Trustee filed an objection.

Claim #5 filed by John McCormick. Total amount claimed: In an amount to be determined based upon a pending lawsuit.

    Against this claim, the Trustee filed an objection.

Page 5

**In re: James Lee Smithey**
 Case No. 10-30310

> Claim #6 filed by Dick Nagel Electric, Inc. Total amount claimed: In an amount to be determined based upon a pending lawsuit.
>
> Against this claim, the Trustee filed an objection.
>
> Claim #7 filed by Frost Mechanical, Inc. Total amount claimed: In an amount to be determined based upon a pending lawsuit.
>
> Against this claim, the Trustee filed an objection.

During the progression of the Debtor's bankruptcy case, extensive discovery was conducted by the Parties on many of the matters set forth herein. The Parties also submitted to the Court numerous memoranda supporting their respective positions on such matters. On March 28, 2011, the Trustee, with the support of the Parties holding nearly all of the pecuniary interests in this case, filed his Motion to compromise all matters pending before the Court. (Doc. No. 89).

### DISCUSSION

Before this Court is the Trustee's Motion to Compromise. A Motion to Compromise, because it directly involves the administration of estate property, is a core proceeding over which this Court has jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(2)(A).

### Legal Framework

At the commencement of a bankruptcy case, an estate is created "compromised of all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In a case filed by a debtor under Chapter 7 of the Bankruptcy Code, a trustee is appointed to administer the debtor's bankruptcy estate. 11 U.S.C. § 701. Once appointed, a trustee is deemed to be a representative of the estate, charged with liquidating estate property as

Page 6

In re: James Lee Smithey
Case No. 10-30310

expeditiously as is compatible with the best interests of the parties-in-interest. 11 U.S.C. §§ 323 & 704.

The scope of estate property is broad and will reach to include nearly every conceivable interest a debtor has in property including causes of action accruing to a debtor as well as claims held by the debtor against third parties. *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204–205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Where a cause of action and/or claim held by a debtor is not liquidated or is disputed, litigation may be necessary to resolve the claim. The same is also true for claims held against a debtor. Litigation, however, can be costly and impose a burden on the estate. Thus, where litigation costs have the potential to be expensive and time consuming, settlements of such claims are encouraged. *See, e.g., Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910) ("Compromises of disputed claims are favored by the courts . . . .").

In order to facilitate the settlement of claims concerning the bankruptcy estate, a trustee may move the bankruptcy court for the authority to compromise a claim. Bankruptcy Rule 9019 governs a Motion to Compromise, providing:

> (a) Compromise
>
> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

This directive of Bankruptcy Rule 9019(a) is completely procedural in character, requiring that two prerequisites be satisfied before a motion to compromise may be approved by the court: (1) notice of the proposed compromise must be provided to all parties having an interest in the matter; and (2) any party having an interest in the motion to compromise must be afforded the opportunity to be heard by the court on the matter. The purpose of these requirements is to prevent the making of

Page 7

10-30310-rls    Doc 135    FILED 07/25/11    ENTERED 07/25/11 14:57:05    Page 7 of 18

concealed agreements which are unknown to creditors and unevaluated by the court. *In re Dana Corp.,* 412 B.R. 53, 58 (S.D. N.Y. 2008).

It is the trustee who carries the burden to establish that a motion to compromise is appropriate. *In re Del Grosso*, 106 B.R. 165, 168 (Bankr. N.D.Ill.1989). For his burden, the Trustee set forth to the Court:

> Days of Rule 2004 examinations, including three of John McCormick alone, have convinced the Trustee that the resolution proposed herein is in the best interests of the Estate and its creditors. Given the contested nature of every claim in this chapter 7 bankruptcy and the related adversary proceedings, and solely for the purposes of settlement, the Trustee believes that as to matters in which he shoulders the burden of proof (i.e., objections to proofs of claim) that standard may not be sustainable. Thus, in order to fulfill his duties under the Bankruptcy Code to pay all claims, this pleading will also serve to compromise all pending matters.

(Doc. No. 89). For brevity's sake, all of the terms of the Trustee's Motion to Compromise will not be repeated here. The following, however, provides an overview of the key terms of the Trustee's proposed global settlement.

### Key Terms of the Trustee's Motion to Compromise

First, to resolve Claim No. 2 filed by the Ohio Farmers Insurance Company, in the total amount of $431,578.58, John McCormick and his business interests agreed to pay Ohio Farmers the sum of $169,000.00 in complete satisfaction of its claim. In return, Ohio Farmers Insurance agreed that the adversary proceeding it brought to recover on its claim of indemnity, in Case No. 10-3128, would be dismissed. To facilitate this arrangement, the Trustee agreed to release and waive any claim he may have had against Ohio Farmer Insurance by reason of its surety bond and indemnity

Page 8

**In re: James Lee Smithey**
**Case No. 10-30310**

agreement. The Trustee also agreed to waive and abandon any preference action he may have concerning prepetition payments made by the Debtor to Ohio Farmers.[1]

Second, based upon his exemptible interest in a vehicle, the Trustee agreed to pay the Debtor the sum of $6,450.00, with the remaining nonexempt value of the vehicle becoming estate property. Third, the two minor claims filed in this case, numbered one and three, would be paid 100% of their asserted value, totaling $3,454.73. Fourth, the Trustee would be paid his statutory fees and expenses. Under the agreement, these fees were estimated to be $10,040.99, but the Trustee agreed that in no event would his fees exceed $20,000.00.

Finally, after payment of the above claims and expenses, all the remaining assets of the estate would be paid in full satisfaction of the claims asserted by McCormick and his business interests, denominated as Claim Nos. 4, 5, 6, and 7. For this purpose, the record presented to the Court shows that these four claims have an estimated value of $858,988.09 and that the Debtor's bankruptcy estate currently has an account balance of $135,369.12. (Doc. No. 72). As it regards the resolution of these claims, the Trustee agreed to dismiss with prejudice Adversary Case No. 10-3127, concerning the litigation on the cognovit judgment held by the Debtor. The Trustee also agreed to assign his interest in Adversary Case No. 10-3135, regarding the two alleged fraudulent transfers made by the Debtor, to John McCormick and his business interests.

---

[1] By way of a Joint Stipulation subsequently filed with the Court, it was represented that the Debtor agreed to withdraw his objection to these terms of the Trustee's Joint Motion to Resolve and Compromise All Pending Matters. (Doc. No. 134). This change in position does not substantively alter this Court's analysis.

**In re: James Lee Smithey**
**Case No. 10-30310**

## Analysis

As a substantive matter, the overall question, underlying a court's approval of a Rule 9019(a) motion to compromise, concerns whether the agreement is both fair and equitable, and in the best interest of the estate. *Olson v. Anderson (In re Anderson)*, 377 B.R. 865, 868 (6th Cir. B.A.P. 2007); *In re Bell & Beckwith*, 93 B.R. 569, 574 (Bankr.N.D.Ohio 1988). In making this assessment, the Supreme Court has instructed that the bankruptcy court is charged with an affirmative obligation to apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968). The Supreme Court then further explained that "the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Id.*

Consistent with these statements of the Supreme Court, bankruptcy courts, when making a determination of whether a trustee's motion to compromise is fair and equitable and in the best interest of the estate, generally weigh these factors: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views. *In re Fishell*, 47 F.3d 1168, 1995 WL 66622 (6th Cir.1995); *Bard v. Sicherman (In re Bard)*, 49 Fed.Appx. 528, 530 (6th Cir. 2002).

When evaluating the weight of these factors, deference is accorded to the trustee's judgment to compromise a claim. *In re Healthco Int'l, Inc.*, 136 F.3d 45, 50 fn. 5 (1st Cir. 1998) ("the bankruptcy judge is not to substitute her judgment for that of the trustee, and the trustee's judgment

Page 10

In re: James Lee Smithey
Case No. 10-30310

is to be accorded some deference."), *citing Hill v. Burdick (In re Moorehead Corp.)*, 208 B.R. 87, 89 (1st Cir. B.A.P. 1997).

In giving deference to the Trustee, the Court cannot discern anything improper with the Motion to Compromise placed before the Court. Initially, as it concerns the above factors (a) and (c), the facts before the Court show that, in order to be successful on those matters he is pursuing, a number of issues, both factual and legal, will need to be litigated. However, the probability of success on all such matters is highly speculative; moreover, even if he were successful, the overall benefit to the estate is questionable.

To begin with, if the Trustee's Motion to Compromise is not approved, the Trustee will have to successfully defend a challenge to the cognovit judgment he holds against John McCormick and his business interests. (Case No. 10-3127). This is anything but assured as there exists a genuine dispute as to whether said judgment was entered on a valid debt. At the same time, the potential harm to the estate of allowing such litigation to proceed cannot be ignored, as the cognovit judgment entered in the case has provided the estate with the sum of $119,558.44, by far the largest asset of the estate. (Doc. No. 72).

In addition, without a settlement in this case, the Trustee will likely need to incur further litigation costs to proceed with his objections to the claims of John McCormick and his business interests. Yet, such litigation is unlikely to confer any real benefit to the estate. In fact, the Debtor acknowledges that if the Trustee were successful in defending against the claims of John McCormick and his business interests, there would likely be sufficient funds "to provide a refund to the Debtor." (Doc. No. 90). The Trustee, however, does not work for the Debtor, but rather works for the Debtor's creditors. In any event, given the nature of a number of the transactions executed by the Debtor while he was a business partner with Mr. McCormick, it is entirely feasible that the claims asserted by John

Page 11

In re: James Lee Smithey
Case No. 10-30310

McCormick and his business interests are valid based upon the Debtor's conversion of company assets.[2]

Further litigation costs will also be incurred by the Trustee to pursue the fraudulent transfer actions pending against the Debtor's wife and son. To be sure, such litigation costs may be very beneficial to the estate given that the value of the fraudulent transfers may be significant. Yet, under the particular circumstances as they exist in this case, compromising such claims is a reasonable approach on a couple of different levels.

One, concerning factor (b), above, there does exists a question whether close relatives of the Debtor would be collectible. But more importantly, the terms of the Trustee's settlement on the fraudulent transfer actions simply assigns the actions to John McCormick and his business interests, as the parties who stand the most gain by the successful prosecution of such actions. In return, John McCormick and his business interests agreed to compromise their claims for the funds remaining in the estate after payment of all other claims and expenses. Overall then, the compromise put forth by the Trustee may be said to result in a dual benefit.

One the one side, in exchange for not having to defend against the claims of John McCormick and his business interests, claims having an estimated value of $858,988.09, the Trustee simply recognizes that such claims are entitled to a distribution from the residual of the estate assets. In return, John McCormick and his business interests, as the parties holding the largest pecuniary interest in this case, receive the right to pursue, and thus will incur the costs to prosecute, any claims they may against the Debtor and his relatives for fraudulent transfers. The estate is, therefore, spared

---

[2] The Court is aware that a Motion for Summary Judgment is pending concerning the validity of the claims held by Mr. McCormick and his business interest. (Case No. 10-3100). Given that the Trustee's Motion to Compromise resolves all the issues before the Court, the Court is not ruling on the Motion at this time.

Page 12

In re: James Lee Smithey
Case No. 10-30310

the costs of litigating matters which, for all practicable purposes, do not involve the estate, but is rather simply a dispute between two parties: the Debtor and John McCormick.

On whole, therefore, given the risks and uncertainty, the Trustee's approach of seeking a global compromise is a reasonable approach. It is moreover noted that the Trustee came to this conclusion after conducting extensive examinations of the Parties involved. The Trustee's Motion to Compromise is, thus, based upon a comprehensive review of the situation. *Matter of Rimsat, Ltd.*, 224 B.R. 685 (Bankr. N.D.Ind. 1997). To this end, when deciding whether to approve a proposed settlement, the bankruptcy court is not required to conduct a mini-trial, but rather must simply be convinced that a trustee's judgment to compromise is based upon a sound assessment of the situation. *See In re Schmitt*, 215 B.R. 417, 423 (9th Cir. B.A.P. 1997). Morever, in making this determination the actual merits of the claim do not need to be actually decided. *In re Joiner*, 319 B.R. 903, 907 (Bankr. M.D. Ga. 2004).

Yet, even setting aside the above considerations, one facet of the Trustee's Motion to Compromise particularly stands out: As set forth in factor (d), above, all of the Parties with a significant interest in this case, with the exception of the Debtor, have agreed to the Trustee's Motion to Compromise. This is very telling given that the purpose of a motion to compromise is to enable a trustee to fulfill his duty of maximizing the amount of estate assets available for distribution. Thus, while creditors, even a majority, do not hold any veto power over a motion to compromise, it is the creditors who, being the stake holders in estate assets, are the parties in the best position to assess whether a proposed compromise is in the best interest of the estate. *Matter of Foster Mortg. Corp.*, 68 F.3d 914, 917-18 (5th Cir. 1995).

It is also true that when a debtor files for Chapter 7 relief, they surrender to the trustee control over their prepetition legal interests. *See* 11 U.S.C. § 323(b) ("the trustee in a case under this title has capacity to sue and be sued."). As a general matter, therefore, on matters concerning the compromise

Page 13

**In re: James Lee Smithey**
**Case No. 10-30310**

of claims, a Chapter 7 debtor has no "dog in the fight." *In re Davidson*, 402 B.R. 877, 883 (Banrk. S.D.Ind. 2009). Rather, a Chapter 7 debtor's interest in their case is generally limited to matters concerning discharge or the dischargeability of a particular debt, or to the exemptibility of estate assets.

The Trustee's Motion to Compromise, however, does not in any manner seek to compromise the Debtor's discharge or the complaint to determine dischargeability pending against him. (Case No. 10-3129). The Trustee's Motion to Compromise, instead, limits its scope to what squarely falls within his sphere of interest: the settlement of claims held by the estate and claims asserted against the estate.

In response, the Debtor puts forth that based "on principals of equity the Court should not rule on the Trustee's Motion to Compromise Claims until after a full and complete adjudication of the issues raised in Adversary Case 10-3129 are fully adjudicated." (Doc. No. 90). In taking this position, the Debtor points out that the Trustee is "obligated to ensure for the integrity of the system that claims that are paid are proper claims." *Id.*

The concerns of the Debtor, however, while not completely unfounded, are not persuasive. First, although a trustee is charged with investigating claims, 11 U.S.C. § 704(a)(5), nothing prevents a trustee from conducting a cost-benefit analysis to determine if compromising a claim would better serve the estate. *See In re Bean*, 251 B.R. 196 (E.D.N.Y. 2000). This is exactly what the Trustee has done here. As already touched upon, the claims asserted by John McCormick and his business interests carry an air of legitimacy, with the evidence before the Court showing that, in his capacity as a principal and employee of Frost & Co., the Debtor wrote many checks from the business account which, at the very least, can be described as unusual in character. Seeking to compromise such claims, thus, is an entirely reasonable approach.

Page 14

In re: James Lee Smithey
Case No. 10-30310

Equity also does not support the Debtor's position. As touched upon earlier, it is clear that the Debtor filed his Chapter 7 bankruptcy case for one reason only: To adjudicate in this forum his dispute with his former business partner, John McCormick. What else could explain this fact: those claims filed in this case which do not relate to the Debtor's litigation with John McCormick total just $3,454.73, representing less than one percent of the $431,220.13 in liquidated debt disclosed by the Debtor in his bankruptcy filing.

In this regard, it may be said that Congress never intended that the bankruptcy courts be used as a forum to adjudicate matters which are, for all practicable purposes, disputes between two parties – particularly here, where the Debtor may be solvent. *See, e.g., In re Holli Lundahl*, 307 B.R. 233, 246 (D.Utah 2003) ("Utilizing the bankruptcy system solely to gain a forum for state or federal proceedings flies in the face of the spirit of the Bankruptcy Code."); *In re Heritage Wood 'N Lakes Estates, Inc.*, 73 B.R. 511, 514 (Bankr. M.D.Fla.1987) (court dismissed bankruptcy case for forum shopping stating that "Debtor, for reasons best known to itself and perhaps the strategy of counsel, determined that it was not going to get the best side of the coin in the state court and looked to go elsewhere to have a new bite at the apple."). Put differently, the laws of bankruptcy and the bankruptcy courts were not created as an alternative forum by which parties could come to litigate their claims.

In conclusion, the Court is confronted with these two salient facts: (1) the Trustee's Motion to Compromise seeks to effectuate a global settlement of all litigation involving parties holding potential claims against the estate; and (2) the parties holding nearly all of the value of the claims filed in this case have agreed to the terms of the proposed global settlement. Based on this, the proposed settlement put forth by the Trustee seems a reasonable approach to resolving what is central to this Court's jurisdiction: overseeing the administration of, and adjudicating cases and controversies concerning the disposition and administration of estate property. Accordingly, based upon the reasonableness of its terms and conditions, the Court finds that the Trustee's Motion to Compromise should be Granted, notwithstanding the Debtor's objection thereto.

Page 15

In re: James Lee Smithey
Case No. 10-30310

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the Trustee, Bruce French, to Compromise All Pending Matters, (Doc. No. 89), be, and is hereby, GRANTED.

*IT IS FURTHER ORDERED* that, within 21 days, the Trustee submit a proposed order for review by the Court.

*IT IS FURTHER ORDERED* that, based upon this Decision, the Hearings set for Wednesday, July 27, 2011, at 11:30 A.M., on the Debtor's Motion to allow the following claims are hereby cancelled: (1) Claim #4 filed by Frost Co., Frost Mechanical, Dick Nagel Electric and John McCormick; (2) Claim #5 filed by John McCormick; (3) Claim #6 filed by Dick Nagel; and (4) Claim #7 filed by Frost Mechanical, Inc.

*IT IS FURTHER ORDERED* that, based upon this Decision, the Hearing set for Thursday, July 28, 2011, at 1:30 P.M., on the Debtor's Objection to the Claim of Ohio Farmers Insurance Company is hereby Cancelled.

Dated: July 25, 2011

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 16

# CERTIFICATE OF SERVICE

Copies were mailed this 25nd day of July, 2011 to:

James Lee Smithey
Debtor
16260 Nottingham Dr.
Wapakoneta, OH 45895

Randy Lee Reeves
Attorney for Debtor
973 W North St
Lima, OH 45805

Bruce C French
Trustee
PO Box 839
Lima, OH 45802-0839

Scott R. Belhorn
Office of US Trustee
201 Superior Ave East, #441
Cleveland, OH 44114-1240

Chase Bank USA, NA
PO Box 15145
Wilmington, DE 19850-5145

Dick Nagel Electric, Inc
9 Broadway
Wapakoneta, OH 45895

Frost & Co, Inc
9 Broadway St
Wapakoneta, OH 45895

Frost Mechanical, Inc
9 Broadway
Wapakoneta, OH 45895

Derek A Younkman
101 N. Elizabeth St, #607
Lima, OH 45801

Faulkner Garmhausen
Keister Shenk
100 S. Main Ave, #300
Sidney, OH 45365-2771

Frost Roofing, Inc
2 Broadway
Wapakoneta, OH 45895

Joshua Koltak
Frost Roofing, Inc
100 South Main Ave, #300
Sidney, OH 45365

Michael A Staudt
Frost Roofing, Inc
100 S Main Ave, #300
Sidney, OH 45365

John McCormick
1004 Hickory Circle
Wapakoneta, OH 45895

Quentin M Derryberry, II
PO Box 2056
103 South Blackhoof St, #200
Wapakoneta, OH 45895

Nicholas V. Schroeder
P.O. Box 307
315 E. Main St.
Ottawa, OH 45875-1973

Ohio Farmers Insurance Company
P.O. Box 5001
Westfield Center, OH 44251

John J Petro
Ohio Farmers Insurance Co
338 S. High St.
Columbus, OH 43215

Robert C. Wiesenmayer, Esquire
15 Willipie St.
Wapakoneta, OH 45895-1985

                                                /s/Laura Doerfler
                                                Clerk, U.S. Bankruptcy Court